IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JGM Fabricators and Constructors,   :
LLC,   :
               Petitioner   :
  :
     v.   :  No. 1732 C.D. 2019
  :  SUBMITTED: February 9, 2021
Commonwealth of Pennsylvania,   :
Department of Labor and Industry,   :
Office of Unemployment   :
Compensation Tax Services,   :
               Respondent   :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: March 1, 2021

      JGM Fabricators and Constructors, LLC (JGM) petitions for review of the November 12, 2019 Final Order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services (Department), which dismissed JGM's Petition for Reassessment (Petition) as untimely. Because we conclude that the Department erred in dismissing JGM's Petition without a hearing, we vacate the Final Order and remand this matter to the Department for an evidentiary hearing on the timeliness of JGM's Petition.

## **Background**

      On October 26, 2018, the Department issued a Notice of Assessment to JGM, assessing JGM in the amount of $997,248.93 as a successor-in-interest to JGM Welding and Fabricating Services, Inc. The Notice of Assessment stated that,

pursuant to Section 304 of the Unemployment Compensation Law (Law),[1] the Department was assessing JGM "for unpaid [unemployment compensation (UC)] contributions, interest[,] and/or penalties owed by [JGM Welding and Fabricating Services, Inc.] . . . due to successor liability." Record (R.) Item No. 1. The Notice of Assessment further stated:

> If you disagree with this assessment, you may file a petition for reassessment WITHIN FIFTEEN (15) DAYS after the date of this Notice. THIS ASSESSMENT WILL BECOME CONCLUSIVE AND BINDING UNLESS YOU FILE A TIMELY PETITION FOR REASSESSMENT.

*Id.* (capitalization in original).[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 784. Section 304(a)(1) of the Law provides:

> Each employer shall file with the [D]epartment such reports, at such times, and containing such information, as the [D]epartment shall require, for the purpose of ascertaining and paying the contributions required by this act.

> (a)(1) If any employer fails within the time prescribed by the [D]epartment to file any report necessary to enable the [D]epartment to determine the amount of any contribution owing by such employer, the [D]epartment may make an assessment of contributions against such employer of such amount of contributions for which the [D]epartment believes such employer to be liable, together with interest thereon as provided in this act.

43 P.S. § 784(a)(1).

[2] Section 304(b) of the Law provides:

> Any employer against whom an assessment is made may, within fifteen days after notice thereof, petition the [D]epartment for a re[]assessment which petition shall be under oath and shall set forth therein specifically and in detail the grounds and reasons upon which it is claimed that the assessment is erroneous. Hearing or hearings on said petition shall be held by the [D]epartment at such places and at

**(Footnote continued on next page…)**

2

On December 17, 2018, JGM filed its Petition, averring that it is not a successor-in-interest to JGM Welding and Fabricating Services, Inc., and, thus, is not liable for the assessment. In the cover letter accompanying the Petition, JGM's counsel stated:

> You will find that this [P]etition is submitted well after the deadline stated on the initial assessment. However, my communication began well before the deadline passed, and was escalated to the [D]epartment's outside counsel. Outside counsel has kicked it back to the [D]epartment and requested that I submit the formal Petition through the typical means.
>
> This is all documented, and I am happy to connect you with the right people to corroborate. . . .

*Id.*[3]

On April 8, 2019, the Department sent a letter to the parties, informing them that the timeliness of the Petition was at issue and directing them to exchange "*all* exhibits relevant to the proceedings," including "any documentation having a mitigating effect[] or otherwise serving to corroborate or contradict the timeliness of the [P]etition." R. Item No. 4 (emphasis in original). The Department further stated:

---

such times as may be determined by rules and regulations of the [D]epartment and due notice of the time and place of such hearing given to such petitioner.

43 P.S. § 784(b); *see also* 34 Pa. Code § 63.26(b) (stating that an employer aggrieved by an assessment "may appeal to the Secretary [of the Department] or the Secretary's designee by filing a petition for reassessment within the time allowed under section 304 [of the Law]").

[3] The record shows that the attorney who represented JGM at the time the Petition was filed, Aaron S. Todrin, Esquire, is not admitted to the bar of the Commonwealth of Pennsylvania; he is admitted to practice in the Commonwealth of Massachusetts and the State of New York. *See* R. Item No. 1; Final Order, 11/12/19, at 13 n.23. On June 3, 2019, Robert J. McNelly, Esquire, a licensed Pennsylvania attorney, entered his appearance on JGM's behalf and continues to represent JGM in this appeal. *See* R. Item No. 6.

3

> In conjunction with the exchange of exhibits, the [p]arties should review their respective positions[] to determine if there have been any developments in this matter that would make a hearing unnecessary. The [p]arties also are otherwise encouraged to remain open to meaningful discussions that may lead to the simplification of the issues, including the stipulation of any facts not remaining in dispute.

*Id.* (underlining in original).

On August 2, 2019, the Department filed a Motion to Dismiss JGM's Petition as untimely. The Department alleged that JGM was required to file its Petition by November 13, 2018,[4] but did not file it until one month later. R. Item No. 9. The Department also specifically averred:

> 2. On November 5, 2018, [JGM's counsel] called and spoke with a UC [t]ax [t]echnician, who referred the matter to the [Department's] Collections and Bankruptcy Unit asking them [sic] to contact [JGM's counsel]. The message was forwarded by the chain of command to the [Department's] Office of Chief Counsel . . . . On November 6, 2018, the [Department's] counsel . . . called [JGM's counsel] regarding the [a]ssessment. On November 8, 2018, the [Department's] counsel . . . received an e[]mail from [JGM's counsel] with attached documentation for review.
>
> 3. [JGM's counsel] did not inquire about the necessity to appeal the [a]ssessment during the November 6, 2018 phone call or in his November 8, 2018 e[]mail. At no time did the [Department's] counsel . . . indicate to [JGM's counsel] that an appeal would be unnecessary.
>
> 4. After November 8, 2018, [JGM's counsel] did not contact [the Department's counsel] until November 26, 2018.
>
> 5. On November 26, 2018, during a phone conversation, the [Department's counsel] informed [JGM's counsel] that his discussions

_____

[4] The Notice of Assessment stated that the last day to appeal was November 10, 2018. R. Item No. 1. However, November 10, 2018 fell on a long holiday weekend, so JGM actually had until November 13, 2018 to file a timely appeal. Final Order, 11/12/19, at 16 n.25.

4

with legal counsel did not remove the need for him to file timely appeals to notices received by his client.

> 6. Among other communications, [JGM's counsel] e[]mailed [Department] staff on December 6, 2018 asserting the [a]ssessment "must be rescinded." He added, "If you need me to formally file a Petition for Reassessment, I'm happy to do that." [JGM's counsel] alleged that he was "instructed that it was not necessary since this was escalated to counsel."

> 7. On December 6, 2018, the [Department's] counsel . . . reiterated to [JGM's counsel] by e[]mail that he needed to respond to any notices received by his client and file timely appeals as necessary. The e[]mail attached a copy of the [Notice of] Assessment and the Petition for Reassessment form.

*Id.* (footnote omitted).

JGM filed a Response to the Motion to Dismiss on August 12, 2019, and, nine days later, filed an Amended Response. In response to the Department's numbered averments, JGM averred as follows:

> 2. Admitted in part and denied in part. It is admitted that [JGM's counsel] made the described call [to the UC tax technician on November 5, 2018], but [JGM] lacks information to admit or deny the second sentence of [p]aragraph 2. [JGM] denies the third sentence of [p]aragraph 2. Answering further, [JGM] states that [its counsel] made the first call to [the Department's counsel].

> 3. Denied. [JGM's counsel] had previously been informed that no appeal was necessary due to the ongoing discussions with counsel for [the Department] and he relied on that information. Answering further, [JGM] states that [JGM's counsel] *specifically* inquired about the need to file an appeal by the [UC] tax technician and was told that it would not be necessary given [that] the matter was being "escalated to counsel." His communication was well before the deadline to appeal. The appeal document is a one-page form, and given the representation

that the matter was escalated to counsel, [JGM's counsel] had no reason to question the [UC tax technician's] representation.

4. Admitted in part [and] denied in part[.] [I]t is admitted that [JGM's counsel] did not have contact with counsel for [the Department between November 8, 2016 and November 26, 2018,] although he did make attempts at contact by telephone.

5. Denied[.] [I]t is denied that [JGM's counsel] was informed of a need to file an appeal [on November 26, 2018] as described in [the Motion to Dismiss], [and] by way of further answer[,] if such advice had been given on November 26, 2018 it would have been useless[,] as the [Department] is now suggesting that the deadline for filing was November 1[3], 2018, two weeks prior.

6. Admitted[.] [B]y way of further answer[,] the portions of the emails quoted by [the Department] contradict [the Department's] prior averments that [JGM's counsel] had previously been informed of the need to file an appeal.

7. Admitted.

R. Item No. 11 (emphasis in original).

In its August 21, 2019 cover letter accompanying the Amended Response, JGM specifically requested a hearing "to establish a record as it relates to the facts disputed in the Motion [to Dismiss] and [the Amended] Response." *Id.* On August 28, 2019, JGM sent an email to the Department inquiring about the status of its request and asking to be notified "when a hearing will be scheduled." R. Item No. 12.

On September 26, 2019, the Department sent a letter to the parties, notifying them that it had referred the Motion to Dismiss to a delegate of the Department's Secretary for disposition. R. Item No. 13. The letter also stated:

6

[The Department], when filing [its] Motion [to Dismiss], also requested a stay of an exhibit exchange [that] the docket clerk previously had directed the [p]arties to complete.  Although neither [p]arty submitted its exhibits, this administering office has no record of a previous response to the stay request.  Accordingly, to alleviate any uncertainty and otherwise remove any ambiguity from the record, this is to clarify that the exhibit exchange is indeed stayed, pending a ruling on the Motion [to Dismiss].

*Id.*  The Department neither mentioned nor responded to JGM's request for an evidentiary hearing in the September 26, 2019 letter.  *See id.*

On November 12, 2019, the Department issued a Final Order dismissing JGM's Petition as untimely.  In its decision, the Department stated that "a hearing has been determined unnecessary" because "the material facts pertaining to the overarching jurisdictional issue are not in dispute."  Final Order, 11/12/19, at 12; *see id.* at 3 n.6.  Based on its review of the parties' filings, the Department concluded that JGM did not establish its entitlement to *nunc pro tunc* relief:

[W]e find [it] unreasonable that [JGM's counsel] unquestionably relied on the information allegedly provided by the [UC tax t]echnician as to the need for filing an appeal or otherwise delayed filing its Petition, even after speaking to [the Department's counsel] only [one] day later, particularly since the information went counter to the instructions and statutory requirements provided []in the [Notice of] Assessment, and the [p]arties' respective counsel apparently did not reach any meaningful agreements (either in the aforementioned conversation, or in conjunction with the e[]mail [JGM's counsel] sent to [the Department's] counsel on November 8, 2019).

Following the last activity/communication, which did not result in a settlement of the dispute and/or [the Department's] rescission of the [a]ssessment, [JGM] still had time in which to file a timely appeal, yet failed to do so.

*Id.* at 15 (footnote omitted).  The Department also determined:

[JGM] blames the delay in filing its Petition on the information the [UC tax t]echnician provided, but the [Notice of] Assessment already had provided [JGM] with clear instructions for filing an appeal thereof, including the relevant period, and with cites to the relevant statutory provisions. Although we readily can imagine [JGM's] surprise upon receipt of the [Notice of] Assessment for nearly one million dollars and that such would incline [JGM] to pursue an immediate dialogue with the issuing office, it is unclear why [JGM's counsel] did not simply file the Petition at the outset, to ensure [JGM's] appeal rights were preserved, particularly, given the extraordinary amount of the [a]ssessment.

*Id.* at 14. Finally, the Department concluded:

[E]ven if we were inclined to agree [that] the information the [UC tax t]echnician provided was an administrative breakdown sufficient to have thwarted [JGM] from filing its Petition in a timely manner, [JGM's] appeal still cannot be granted nunc pro tunc [relief].

[The Department's] counsel informed [JGM's counsel] in an e[]mail on December 6, 201[8], which [JGM] admits, of the "need[] to respond to any notices received . . . and file timely appeals as necessary. [The Department's] communication removed any doubt that [JGM] needed to file an appeal, thereby eliminating any reliance upon its conversation with the [UC tax t]echnician for further delay.

Despite such clarification, [JGM] did not file its Petition until December 17, 201[8]. [JGM] offers no explanation why it waited another 11 days before filing the Petition. . . . [JGM] appears to assume a virtually indefinite period in which to act (based on its asserted but dubious reliance on the [UC tax t]echnician's information) but, once provided new (and indisputably correct) information, did not act with due diligence, and, therefore, negligently.

*Id.* at 16-17 (footnote omitted). JGM now petitions this Court for review.[5]

---

[5] Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights have been violated. *Kenneth S. Hantman, Inc. v. Off. of Unemployment Comp. Tax Servs.*, 928 A.2d 448, 451 n.6 (Pa. Cmwlth. 2007).

## Analysis

### 1. Waiver

Before we address the issue on appeal, we must first address the Department's waiver argument. In its brief, the Department asserts that JGM has waived its challenge to the Department's failure to hold a hearing because JGM did not raise that issue in its Petition for Review. We disagree.

Pa. R.A.P. 1513(d)(5) requires that a petition for review contain "a general statement of the objections to the order or other determination"; however, the rule also provides that "*the omission of an issue from the statement shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record.*" Pa. R.A.P. 1513(d)(5) (emphasis added). The official note to Rule 1513(d) further explains:

> The 2014 amendments to Pa.[]R.A.P. 1513(d) relating to the general statement of objections in an appellate jurisdiction petition for review are *intended to preclude a finding of waiver if the court is able, based on the certified record, to address an issue not within the issues stated in the petition for review but included in the statement of questions involved and argued in a brief.* The amendment neither expands the scope of issues that may be addressed in an appellate jurisdiction petition for review beyond those permitted in Pa.[]R.A.P. 1551(a) nor affects Pa.[]R.A.P. 2116's requirement that "[n]o question will be considered unless it is stated in the statement of questions involved [in appellant's brief] or is fairly suggested thereby."

Pa. R.A.P. 1513 Note (emphasis added).

Here, although JGM did not raise the hearing issue in its Petition for Review, it specifically raised the issue in its Statement of Questions Involved and addressed the issue in the Argument section of its appellate brief. *See* JGM Br. at 4, 9-12. We

9

are also able to review this claim based on the existing record. Therefore, pursuant to Pa. R.A.P. 1513(d)(5), we decline to find waiver under these circumstances.

## 2. Failure to Hold a Hearing

On appeal, JGM asserts that the Department erred in dismissing its Petition without a hearing. JGM contends that there are disputed issues of fact relating to the timeliness of the Petition and the Department improperly denied JGM the opportunity to present any evidence or legal argument establishing its entitlement to *nunc pro tunc* relief. We agree.

Our Court recently explained the requirements for a *nunc pro tunc* appeal of a UC tax assessment as follows:

> It is well established that the failure to file an appeal within the requisite time period is jurisdictional. Our Supreme Court has cautioned that "[i]n order to perfect an appeal, parties must strictly adhere to the statutory provisions for filing an appeal." The deadline for filing an appeal "cannot be extended as a matter of grace or mere indulgence." Moreover, "[t]he burden to establish the right to have an untimely appeal considered is a heavy one because the statutory time limit established for appeals is mandatory."

> Limited circumstances exist in which an untimely appeal may be considered. *Nunc pro tunc* relief is a form of equitable relief that is available only "in certain extraordinary circumstances." Allowable exceptions include cases involving fraud, a breakdown in the administrative process, or when there is a "non-negligent failure to file a timely appeal which was corrected within a very short time, during which any prejudice to the other side of the controversy would necessarily be minimal."

*Best Courier v. Dep't of Lab. & Indus., Off. of Unemployment Tax. Comp. Servs.*, 220 A.3d 696, 700 (Pa. Cmwlth. 2019) (internal citations and footnote omitted); *see also Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 844 (Pa. Cmwlth. 2017) (stating that an appeal *nunc pro tunc* may be allowed where the delay

in filing the appeal was caused by extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent circumstances related to the petitioner, his or her counsel, or a third party).

In this case, JGM seeks to invoke the exception for non-negligent circumstances. JGM Br. at 12. JGM maintains that its former counsel, Attorney Todrin, relied on incorrect information provided by both the UC tax technician and the Department's counsel during the relevant time period.[6] JGM Br. at 5, 12; *see also* Dep't Br. at 5 ("In response to the Notice [of Assessment], [Attorney Todrin] contacted *various Department . . . personnel, including the undersigned counsel*, prior to the deadline for filing the Petition for Reassessment.") (emphasis added). JGM contends that "[a]s a result of miscommunication and incorrect information provided by [the] Department," it filed its Petition "only slightly more than 30 days past the November 1[3], 2018 deadline." JGM Br. at 5. JGM further contends that because it filed its Petition only one month after the deadline, there was no prejudice to the Department, as evidenced by the fact that the Department did not even challenge the Petition's timeliness until eight months later. *Id.*

Section 504 of the Administrative Agency Law provides that "[n]o adjudication of a Commonwealth agency shall be valid as to any party *unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard*." 2 Pa. C.S. § 504 (emphasis added). This Court has recognized, however, that "where *no factual issues are in dispute*, no evidentiary hearing is required under

---

[6] While JGM seeks to invoke the non-negligent circumstances exception, the Department also considered this matter under the administrative breakdown exception. *See* Final Order, 11/12/19, at 6, 12-13. The Department observed that "[JGM's] Responses to the Motion [to Dismiss] implicitly raise a question as to whether the information the [UC tax t]echnician provided to [JGM's counsel] amount[ed] to an administrative breakdown or fraud, or in the alternative, whether [JGM's] conduct (specifically, delaying the filing of its Petition) was non-negligent under such circumstances." *Id.* at 6.

11

2 Pa.[]C.S. § 504." *United Healthcare Benefits Tr. v. Ins. Comm'r*, 620 A.2d 81, 83 (Pa. Cmwlth. 1993) (emphasis added). In other words, "[w]here there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard[,] and the Administrative Agency Law requires no more." *Id*.

Here, the Department determined that a hearing was unnecessary because it found no disputed "material facts pertinent to the overarching jurisdictional issue." Final Order, 11/12/19, at 12. For example, with regard to the November 6, 2018 phone call and the November 8, 2018 email referenced in the parties' averments, the Department found:

> *[T]here is no dispute* that [JGM's counsel] did not ask or otherwise discuss with [the Department's] counsel whether it was necessary to file an appeal during the initial communications between the parties' respective counsel; that is, those interactions prompted by or stemming from and otherwise following his conversation with the [UC tax t]echnician (even more explicitly, after the anticipated escalation of the matter to counsel had occurred). *[JGM] also does not dispute* [the Department's] averment that its counsel "[a]t no time . . . indicated to [JGM's counsel] that an appeal would be unnecessary."

*Id.* at 7-8 (emphasis added); *see id.* at 15. These statements, however, are unsupported by the record.

In response to the Department's averments in paragraph 3 of the Motion to Dismiss – (1) that JGM's counsel did not ask about the need to appeal in either the November 6, 2018 call or November 8, 2018 email and (2) that the Department's counsel "at no time" informed him that an appeal was unnecessary – JGM specifically replied, "*Denied.*" R. Item No. 11 (emphasis added).[7] JGM further

---

[7] This overt denial is in contrast to JGM's responses to other of the Department's averments, wherein JGM replied, "Admitted in part and denied in part." *See* R. Item No. 11.

averred, in that same paragraph, that its counsel "had previously been informed that no appeal was necessary due to ongoing discussions with counsel for [the Department]." *Id.* The Department, however, disregarded these conflicting averments by stating that "such details on which the [p]arties['] respective representations do not fully align are of limited import." Final Order, 11/12/19, at 3; *see also id.* at 17 n.28 ("[T]he [p]arties disagree as to whether [JGM's counsel] was informed of the need to appeal in a November 26, 2018 telephone conversation with [the Department's] counsel, so this detail has been deemed a neutral fact.").

The Department also repeatedly noted that key emails referenced in the parties' averments were not part of the record, but with regard to each email, the Department found that "its gist is not in dispute." *See* Final Order, 11/12/19, at 7 n.11; *id.* at 9 n.16; *id.* at 10 n.18.[8] As explained above, however, the parties *did* dispute the content of several emails. *See* R. Item Nos. 9, 11. For example, JGM averred that "the portions of the emails quoted by [the Department] contradict [its] prior averments that [JGM's counsel] had previously been informed of the need to file an appeal." R. Item No. 11. JGM also "denied that [its counsel] was informed of a need to file an appeal [in the November 26, 2018 phone call]." *Id.* Absent any testimony or evidence as to the substance of the parties' email and phone discussions regarding the filing of an appeal, the Department was unable to make important factual findings and credibility determinations, as it acknowledged. *See* Final Order, 11/12/19, at 8 ("Because a hearing at which the testimony of witnesses may be offered has been determined unnecessary . . . , we do not make a credibility determination regarding the[] [parties'] differing representations.").

---

[8] On September 26, 2019, the Department acknowledged that the parties had not submitted any exhibits as of that date, yet it stayed the exchange of exhibits pending disposition of the Motion to Dismiss. *See* R. Item No. 13.

More importantly, in its April 8, 2019 letter addressing the timeliness of the Petition, the Department directed the parties to "review their respective positions[] to determine if there have been *any developments in this matter that would make a hearing unnecessary*." R. Item No. 4 (underlining omitted) (emphasis added). This sentence suggests that a hearing on timeliness *would* occur *unless* the parties informed the Department that a hearing was unnecessary. Thereafter, JGM explicitly requested an evidentiary hearing "to establish a record as it relates to the facts disputed in the Motion [to Dismiss] and [the Amended] Response." R. Item No. 11. One week later, having received no response, JGM sent an email to the Department inquiring about the status of its request and asking to be notified "when a hearing will be scheduled." R. Item No. 12. At that point, JGM had no reason to believe, based on the Department's statement in its April 8, 2019 letter and its explicit hearing request, that an evidentiary hearing would *not* take place.

In its decision, the Department noted that it was "unclear why [JGM's counsel] did not simply file the Petition at the outset, to ensure [JGM's] appeal rights were preserved, particularly[] given the extraordinary amount of the [a]ssessment." Final Order, 11/12/19, at 14. The Department also noted that JGM "offer[ed] no explanation for why it waited another 11 days" after its December 6, 2018 email communication with the Department's counsel to file the Petition. *Id.* at 16-17. However, the Department never gave JGM an opportunity to present testimony or evidence on these issues, nor did it allow the parties to file briefs or present oral argument in the absence of a hearing. *See United Healthcare*, 620 A.2d at 83 (recognizing that an agency may issue a ruling without a hearing if there are no disputed factual issues and "*the motion proceedings, including briefs and arguments by both parties*, provide ample opportunity for the parties to be heard") (emphasis

14

added); *see also* JGM Br. at 5 ("[D]espite a written request[] . . . by [JGM,] no evidentiary hearing nor legal argument was allowed as to the filing date issue.").

Furthermore, the Department never gave JGM an opportunity to establish that, by filing the Petition one month after the appeal deadline, it corrected its mistake in a short time, "*during which any prejudice to the other side of the controversy would necessarily be minimal.*" *Best Courier*, 220 A.3d at 700 (emphasis added). Significantly, in its Motion to Dismiss, the Department did not allege that it was prejudiced by the late filing, nor did it allege that it did not receive notice of the filing of the Petition. In fact, the Department did not even challenge the timeliness of the Petition until *eight months after* it was filed, and *four months after* the Department notified the parties, in its April 8, 2019 letter, that timeliness was at issue.

In dismissing the Petition, the Department emphasized that JGM was represented by counsel during the relevant period and that, as a licensed attorney, Attorney Todrin should not have relied on information he received from the UC tax technician or the Department's counsel when he delayed filing the Petition. *See* Final Order, 11/21/19, at 13 & n.23. As noted earlier, however, the record indicates that Attorney Todrin is not admitted to practice law in Pennsylvania. *See supra* note 3. Because no record was developed on this issue, we do not know the circumstances of Attorney Todrin's representation of JGM at that time, nor do we know if Attorney Todrin had any experience in UC tax matters in Pennsylvania before filing the instant Petition.

## Conclusion

Under the unique circumstances of this case, we conclude that the Department erred in dismissing JGM's Petition without an evidentiary hearing on timeliness.

15

The Department dismissed the Petition based solely on the parties' factual averments in the Motion to Dismiss and Amended Response, many of which conflicted. The parties had no opportunity to file briefs, present legal argument, or present any evidence in support of their averments. Furthermore, the Department's April 8, 2019 letter suggested that a hearing would take place unless the parties informed the Department that a hearing was unnecessary, after which JGM explicitly requested a hearing. The Department never acknowledged or responded to this request before issuing its ruling.

We conclude that by dismissing JGM's Petition without a hearing, briefs, oral argument, or any testimonial or documentary evidence on the timeliness issue, the Department deprived JGM of a reasonable opportunity to satisfy its "heavy" burden of proving its entitlement to *nunc pro tunc* relief. *See Best Courier*, 220 A.3d at 700; *United Healthcare*, 620 A.2d at 83; 2 Pa. C.S. § 504.

Accordingly, we vacate the Department's Final Order and remand this matter to the Department for an evidentiary hearing on the issue of the timeliness of JGM's Petition.[9]

                                    _____
                                    ELLEN CEISLER, Judge

---

[9] In its Petition for Review and brief, JGM also argues the merits of its underlying claim challenging the validity of the assessment. However, we may not review this claim because the only issue properly before this Court is the timeliness of JGM's Petition.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JGM Fabricators and Constructors, :
LLC, :
             Petitioner :
              :
       v. : No. 1732 C.D. 2019
              :
Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
Office of Unemployment :
Compensation Tax Services, :
             Respondent :

# **O R D E R**

AND NOW, this 1st day of March, 2021, the Final Order of the Department of Labor and Industry, Office of Unemployment Compensation Tax Services (Department), dated November 12, 2019, is hereby VACATED, and this matter is hereby REMANDED to the Department for an evidentiary hearing on the timeliness of the Petition for Reassessment filed by JGM Fabricators and Constructors, LLC.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge